IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

:

BERNI FOMENGIA, et al.

:

v.                              : Civil Action No. DKC 2003-2709

:

MONTGOMERY COUNTY DEPARTMENT
OF HEALTH AND HUMAN SERVICES    :

## MEMORANDUM OPINION

Presently pending and ready for resolution in this discrimination case is Defendant's motion for summary judgment. (Paper 46).  The issues have been fully briefed and the court now rules, no hearing being deemed necessary.  Local Rule 105.6.  For the reasons that follow, the court will grant Defendant's motion.

In this employment discrimination case Plaintiffs, Bernie Fomengia, Paul Gbenoba, Daniel Solee, Joseph Ogunsanya, Emmanuel Adetunji, Joseph Osazuwa, and Ezekiel Iyanda, allege that Defendant Montgomery County Department of Health and Human Services violated Title VII (42 U.S.C. § 2000e *et seq.*) by discriminating against Plaintiffs "on the basis of race, color, national origin, sex, age, and retaliation for prior protected activity." (Paper 13, at 2). Four Plaintiffs, Mr. Fomengia, Mr. Solee, Mr. Iyanda, and Mr. Osazuwa raise disparate treatment claims based on failure to hire. Three Plaintiffs, Mr. Gbenoba, Mr. Ogunsanya, and Mr. Adetunji are current employees of Defendant and bring disparate treatment claims based on failure to promote.  Mr. Gbenoba and Mr. Ogunsanya also

assert retaliation claims based on their prior allegations of discrimination.

Mr. Gbenoba, Mr. Ogunsanya, and Mr. Fomengia filed a Charge of Discrimination against Defendant with the Equal Employment Opportunity Commission (EEOC) on February 21, 2003, alleging that Defendant intentionally discriminated against them by selecting less qualified candidates for positions they had sought.[1]  The charge of discrimination also claimed that Defendant retaliated against Mr. Gbenoba and Mr. Ogunsanya for their past allegations of employment discrimination.  The original complaint in this action was filed on September 22, 2003, by the initial Plaintiffs, Mr. Fomengia, Mr. Gbenoba, Mr. Ogunsanya, and Mr. Solee.  Defendant filed an answer to the complaint on October 23, 2003.  On November 26, 2003, Plaintiffs filed a motion for leave to amend their complaint seeking to add Mr. Iyanda, Mr. Osazuwa, and Mr. Adetunji as Plaintiffs and to certify the case as a class action.  The motion to add the additional Plaintiffs was granted on April 8, 2004, and Plaintiffs filed an amended complaint reflecting these changes on April 12, 2004.  On April 20, 2004, Defendant filed an answer to the amended complaint.

On November 10, 2005, Plaintiffs again filed a motion for leave to amend the complaint.  Plaintiffs sought to add additional

---

[1] Another individual, Mr. Martin Sangong, joined in making this complaint, but is not a party to this action.

allegations of retaliatory conduct and a new claim and to withdraw the class action allegations.  On April 17, 2006, this court issued an Order and accompanying Memorandum Opinion denying Plaintiffs' motion with respect to the new factual allegations and the new claim but allowing the Plaintiffs to withdraw their class action allegations.  The court ordered Plaintiffs to file a clean copy of the amended complaint no later than April 24, 2006.  Plaintiffs have, to date, failed to comply with this order.  All references to class action allegations in the Amended Complaint filed April 12, 2004, will be treated as withdrawn.

Defendant filed the instant motion for summary judgment on May 5, 2006.  Defendant asserts that Plaintiffs have not forecast sufficient evidence to support their claims of intentional employment discrimination.[2]  The facts discussed in this opinion are based on the record and are either undisputed or presented in the light most favorable to Plaintiffs.

## I.  Standard of Review

It is well established that a motion for summary judgment will be granted only if there exists no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* Fed.R.Civ.P. 56(c); *Anderson v. Liberty Lobby, Inc.*, 477

---

[2] Defendant also argues that Plaintiffs should have sued Montgomery County instead of a department within the county. Because Defendant's motion for summary judgment will be granted, the court does not address this argument.

U.S. 242, 250 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).   In other words, if there clearly exist factual issues "that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party," then summary judgment is inappropriate. *Anderson*, 477 U.S. at 250; *see also Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987); *Morrison v. Nissan Motor Co.*, 601 F.2d 139, 141 (4th Cir. 1979).   The moving party bears the burden of showing that there is no genuine issue as to any material fact and that he is entitled to judgment as a matter of law.   *See* Fed.R.Civ.P. 56(c); *Catawba Indian Tribe of S.C. v. South Carolina*, 978 F.2d 1334, 1339 (4th Cir. 1992), *cert. denied*, 507 U.S. 972 (1993).

When ruling on a motion for summary judgment, the court must construe the facts alleged in the light most favorable to the party opposing the motion.   *See United States v. Diebold*, 369 U.S. 654, 655 (1962); *Gill v. Rollins Protective Servs. Co.*, 773 F.2d 592, 595 (4th Cir. 1985).   A party who bears the burden of proof on a particular claim must factually support each element of his or her claim.   "[A] complete failure of proof concerning an essential element . . . necessarily renders all other facts immaterial." *Celotex Corp.*, 477 U.S. at 323.   Thus, on those issues on which the nonmoving party will have the burden of proof, it is his or her responsibility to confront the motion for summary judgment with an affidavit or other similar evidence in order to show the existence

4

of a genuine issue for trial. *See Anderson*, 477 U.S. at 256; *Celotex Corp.*, 477 U.S. at 324. However, "[a] mere scintilla of evidence in support of the nonmovant's position will not defeat a motion for summary judgment." *Detrick v. Panalpina, Inc.*, 108 F.3d 529, 536 (4th Cir.), *cert. denied*, 522 U.S. 810 (1997). There must be "sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party. If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Anderson*, 477 U.S. at 249-50 (citations omitted).

Plaintiffs in this case allege and will have the burden of establishing employment discrimination. There are two methods to prove intentional discrimination in employment: (1) through direct or indirect evidence of intentional discrimination, or (2) through circumstantial evidence under the three-step, burden-shifting scheme set forth by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802-05 (1973). For the first method, an employee may utilize "ordinary principles of proof using any direct or indirect evidence relevant to and sufficiently probative of the issue." *Rhoads v. F.D.I.C.*, 257 F.3d 373, 391 (4th Cir. 2001) (internal quotation omitted), *cert. denied*, 535 U.S. 933 (2002). In order to overcome a summary judgment motion based upon this method of proof, the plaintiff "must produce direct evidence of a stated purpose to discriminate and/or [indirect] evidence of sufficient probative force to reflect a genuine issue of material

fact." *Id.* (internal quotation omitted).  More specifically, the plaintiff must provide "evidence of conduct or statements that both reflect directly the alleged discriminatory attitude and that bear directly on the contested employment decision." *Id.* at 391-92 (internal quotation omitted).  If such evidence is lacking, the plaintiff nevertheless may proceed under *McDonnell Douglas*.  *See Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002).

Under the *McDonnell Douglas* framework, the plaintiff first must establish a *prima facie* case of discrimination.  *See McDonnell Douglas Corp.*, 411 U.S. at 802.  Once a plaintiff establishes a *prima facie* case of discrimination, the burden of production shifts to the defendant to present a legitimate, nondiscriminatory reason for the adverse employment action alleged.  *See Reeves v. Sanderson Plumbing Products, Inc.*, 530 U.S. 133, 142 (2000) (citing *Texas Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).  If the defendant succeeds in doing so, that will rebut the presumption of discrimination raised by the plaintiff's *prima facie* case.  *See Stokes v. Westinghouse Savannah River Co.*, 206 F.3d 420, 429 (4th Cir. 2000) (citing *Burdine*, 450 U.S. at 255 n.10).  The plaintiff then must "prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Burdine*, 450 U.S. at 253.  In the end, "[t]he plaintiff always bears the ultimate

burden of proving that the employer intentionally discriminated against her." *Evans v. Tech. Applications & Serv. Co.*, 80 F.3d 954, 959 (4th Cir. 1996) (citing *Burdine*, 450 U.S. at 253).

## II.  Mr. Fomengia

Mr. Fomengia claims that Defendant discriminated against him in its decision not to hire him.  He is a black male born in Cameroon, Africa, and he worked as an Income Assistance Program Specialist II for the Howard County Department of Social Services at the time the challenged employment decisions were made.  Mr. Fomengia alleges that he applied for at least twelve positions with the Defendant but has not been hired.  Within the time period applicable to this case, Mr. Fomengia applied for a position as an Income Assistance Program (IAP) Specialist I/II with Defendant in 2001.  The Defendant hired approximately twice per year for this position.  An IAP Specialist I/II "determines the eligibility of County residents for various programs available to . . . [those] who are in need of financial assistance and other support services."  (Paper 46, at 2-3).  Mr. Fomengia met the minimum qualifications for this position.

The Defendant claims that it followed a standardized process to recruit for the IAP Specialist I/II position and evaluate candidates.

> All applicants who met the minimum qualifications were placed on an eligibility list for a period of six months. As vacancies occurred, the eligibility list was used to

> select persons for interviews. An interview
> panel of three members was used to interview
> candidates and applied the same criteria in
> rating each candidate. . . . Points were
> given for each of the three criteria
> considered. . . . As a result of the
> interview ratings, candidates were offered
> positions then vacant or were considered for
> positions that subsequently became vacant
> during the six month period of the eligibility
> list.

(Paper 46, Ex. 1, Hohlfeld Aff., at 1-2 ¶ 3). The criteria used

for rating candidates for the IAP Specialist I/II position were:

> a. The application or resume was reviewed for
> quality, documentation of training and
> education, employment within [the Department
> of Health and Human Services] and Montgomery
> County Government and knowledge of Income
> Assistance programs; b. The interview was
> evaluated with consideration of the quality of
> the answer to each of several questions and
> the attitude and sincerity demonstrated by the
> candidate; and c. Two references for each
> candidate, one of which was from the person's
> immediate supervisor or person currently able
> to attest to the candidate's job performance.

*Id.* at 2 ¶ 3.

Defendant concluded that Mr. Fomengia met the minimum

qualifications for the position and selected Mr. Fomengia for an

interview, which took place in August 2002.[3] Mr. Fomengia claims

---

[3] Mr. Fomengia asserts in his affidavit that this interview
occurred only because he met with Carolyn Hohlfeld of the
Montgomery County department of Human Resourcces after being denied
interviews for past positions. Mr. Fomengia recalls that Ms.
Hohlfeld "subseqently made it possible for me to be placed on the
eligibility list for an interview." (Paper 56, Ex. D, Fomengia
Aff., at 1 ¶¶ 3-4). The significance of this factual allegation is
unclear.

that before the interview, Kathryn Barrett, Manager of Income Support Programs for Defendant and a member of the interview panel, pulled him aside and made statements that Plaintiffs contend are evidence of discrimination.  Ms. Barrett stated in her deposition that after the interview she spoke with Kathi Heflin, Assistant Director of the Howard County Department of Social Services and Mr. Fomengia's supervisor, who provided negative information about Mr. Fomengia's performance at work.[4]  Mr. Fomengia claims that this adverse reference was fabricated.  Mr. Fomengia was not hired after his August 2002 interview, but four applicants were hired.  Mr. Fomengia subsequently renewed his application for the Specialist I/II position but has not been offered the position.

Defendant does not address whether Mr. Fomengia has established a *prima facie* case of discrimination under *McDonnell Douglas*, but offers evidence that it argues supports two non-discriminatory rationales for not hiring Mr. Fomengia.  For the hiring decisions made in 2002, when four other candidates were hired, Defendant claims that Mr. Fomengia was not hired because Ms. Heflin provided adverse reference information to Ms. Barrett after

---

[4] Mr. Fomengia consented to contact with three references at the Howard County Department of Social Services, but Ms. Heflin was not among these individuals.  Mr. Fomengia argues that Ms. Barrett's contact with Ms. Heflin was unauthorized.  Ms. Barrett claims that as far as she can remember Ms. Heflin returned a call she placed to one of the references Mr. Fomengia authorized her to contact.  The parties do not articulate how an unauthorized reference would be legally significant in this case.

Mr. Fomengia's interview.  Defendant additionally asserts that it considered only internal candidates for the IAP Specialist I/II position after November 20, 2002 because a hiring freeze prohibited hiring outside candidates.  Defendant argues that this hiring freeze was a second rationale for not hiring Mr. Fomengia from the eligibility list after November 20, 2002.

## A.   Adverse Reference Information

Ms. Heflin allegedly told Ms. Barrett that Mr. Fomengia was currently being disciplined by his employer, wasn't skilled using software employed by both departments, had failed to take appropriate action to complete cases, had experienced personality conflicts with each of his supervisors, and had been suspended for not following through on assignments.  (Paper 60, Ex. D, Barrett Dep., at 66-68).  This kind of negative recommendation, specific to the duties of the position under consideration, is a non-discriminatory rationale for not hiring a candidate.  *See Evans v. Techs. Applications & Serv. Co.*, 80 F.3d 954, 960 (4th Cir. 1996) ("Job performance . . . [is] widely recognized as [a] valid, non-discriminatory bas[is] for any adverse employment decision.").

Given Defendant's non-discriminatory rationale for not hiring him, Mr. Fomengia must "demonstrate that the proffered reason was not the true reason for the employment decision." *Burdine*, 450 U.S. at 256.  A plaintiff can demonstrate that an asserted non-discriminatory rationale is pretextual either by showing that "the

facts supporting the defendant's articulated reason are untrue,"
*Gbenoba v. Montgomery County Dept. of Health and Human Servs.*, 209
F.Supp.2d 572, 577 (D.Md. 2002), *aff'd* 57 Fed.Appx. 572 (2003), or
by "show[ing] that the employer's articulated reasons were not the
actual reasons relied on, but rather created as a 'post hoc
rationalization for the decision.'" *Wise v. Gallagher Basset
Servs., Inc.*, 228 F.Supp.2d 671, 675 (D.Md. 2002) (quoting *Gbenoba*,
209 F.Supp.2d at 577).

Plaintiffs assert three arguments why this rationale is a
pretext for discrimination.  First, they argue that the statements
Ms. Barrett allegedly made to Mr. Fomengia are sufficient evidence
of racial animus to conclude that Defendant's alleged rationale for
not hiring Mr. Fomengia was pretextual.  Mr. Fomengia's affidavit
describes these statements as follows:

> . . . [B]efore the interview, Ms. Barrett,
> pulled me to the side and told me the
> following:
> 'I will never get a clearance through her
> interview process as to be able to work in the
> Montgomery County Department of Health and
> Human Services';
> 'She has made it impossible for me to be
> hired and asked me, if whether she will change
> her mind to recommend that I 'should be hired'
> 'She had interviewed me many times and
> personally failed me', . . . . 'why do you
> continue to apply for this position, why do
> you suppose that I will change my mind?'
> 'With all of the qualifications that you
> possess, why keep applying for this position,
> why not go and work somewhere else with all of
> the qualifications and education you have
> acquired?'

> 'Those who will be selected will only be
> starting on a low salary of $25,000 on
> Specialist I level.'
> 'With my government job with the State of
> Maryland, I will not even earn what I am
> currently earning . . . do you still want to
> be interviewed?. . . . why did you not resign
> your position with the State of Maryland
> before applying for this position?'

(Paper 56, Ex. D, Fomengia Aff., at 1-2 ¶ 6a-f).

This argument fails to create any material questions of fact as to whether the Defendant's asserted negative reference rationale is pretextual. Ms. Barrett's alleged statement does not suggest the falsity of the negative reference information or express any animus as to any of the protected categories upon which Mr. Fomengia claims discrimination. Ms. Barrett's alleged statement appears to be critical of Mr. Fomengia's qualifications and the appropriateness of the IAP Specialist I/II position for him, but it does nothing to suggest a discriminatory intent.

Mr. Fomengia next argues that Ms. Barrett fabricated the negative reference information. This argument would establish pretext if supported because it would directly negate the facts underlying Defendant's asserted rationale, but Mr. Fomengia does not forecast sufficiently probative evidence to allow the trier of fact to find that the reference information was fabricated. Mr. Fomengia states in his affidavit that he was not "subjected to any alleged disciplinary actions with Howard County Department of Human Services prior to the August 2002 interview" and that "it was later

alleged that the reason I was denied the Income Assistance Program Specialists II. position to alleged performance and disciplinary action while employed at Howard County, which is not true." (Paper 56, Ex. D, Fomengia Aff., at 2-3).   Mr. Fomengia offers his reference consent form, which lists three references, but does not list Ms. Heflin.  (Paper 56, Ex. T).  He also provides notes that appear have been written by employees of Defendant upon contacting two other references, which indicate positive performance. (Paper 56, Ex. U).  Finally, Mr. Fomengia offers a document indicating that he was disciplined for providing inadequate customer service in April, 2004.  (Paper 56, Ex. V).

The evidence offered by Mr. Fomengia is insufficient to allow a reasonable juror to find that Ms. Barrett did not receive negative information about him from Ms. Heflin.   Mr. Fomengia's assertion that he was not disciplined by Howard County, even taken as true, does not challenge the other negative information that Ms. Barrett states she received from Ms. Heflin.  Ms. Heflin's alleged negative evaluation of Mr. Fomengia's performance, apart from the alleged discipline, provides a sufficient non-discriminatory rationale for Defendant's decision not to hire Mr. Fomengia. Likewise, the two positive references are not particularly probative as to the falsity of the alleged third reference, because the Defendant could have received conflicting references and nonetheless been justified in rejecting Mr. Fomengia due to the

negative reference.   The document establishing that Mr. Fomengia was disciplined in 2004 also carries little probative weight in demonstrating that he was not also disciplined earlier, and does nothing to disprove the remainder of the alleged negative evaluation of his performance.   This evidence is insufficiently probative to support the trier of fact in concluding that the alleged negative reference was fabricated.   *See Anderson*, 477 U.S. at 249-50.

Finally, Mr. Fomengia points to his own qualifications as evidence that Defendant's rationale for not hiring Mr. Fomengia was pretextual.   Mr. Fomengia has not shown that he was more qualified for the position than the four candidates who were hired in 2002, as would be required to show that Defendant's rationale for not hiring him was pretextual.   *See Gbenoba*, 209 F.Supp.2d at 577.   Mr. Fomengia offers no evidence as to the qualifications of the four individuals hired for the IAP Specialist I/II position in 2002, but submits only Mr. Fomengia's resume.   This evidence is logically insufficient to establish that Mr. Fomengia was more qualified than the applicants hired for the IAP Specialist I/II position.

## B. Hiring Freeze

As an additional non-discriminatory rationale for not hiring Mr. Fomengia from the eligibility list after November 20, 2002, Defendant asserts that a hiring freeze in effect as of that date caused it to consider only internal candidates for the IAP

14

Specialist I/II position.   Mr. Fomengia argues that the alleged hiring freeze is pretextual, but does not forecast evidence that would support the trier of fact in making such a finding.

Mr. Fomengia provides Mr. Gbenoba's statement that "Sheila Jackson-Dodd was hired as an Intensive Case Manager from Catholic Charities, outside of Montgomery County, during the alleged hiring freeze in 2002-2003," (paper 56, Ex. A, Gbenoba Aff., at 3 ¶ 23), to show that the hiring freeze is pretextual.   Mr. Gbenoba's statement provides no other information about the date Ms. Jackson-Dodd was hired, how he was aware of this information, or why the hiring of Ms. Jackson-Dodd would have violated the hiring freeze.

Defendant explains that Ms. Jackson-Dodd was offered a position on November 4, 2002, before the hiring freeze went into effect on November 20, 2002, (paper 60, Ex. A, Hohlfeld Aff., at 2), and that she was therefore allowed to start work after the hiring freeze was implemented.   (*Id.* at 2 & attachment 2).

There remains no genuine dispute of fact as to whether Defendant's alleged hiring freeze was uniformly enforced.   The parties are in agreement that Ms. Jackson-Dodd started work during the hiring freeze.   Mr. Gbenoba's statement does not contradict Defendant's evidence that Ms. Jackson-Dodd was offered a position before the hiring freeze became effective and started work after the hiring freeze was implemented.   Mr. Fomengia offers no other factual basis upon which the trier of fact could base a conclusion

that the hiring freeze was contrived or applied in a discriminatory fashion.

## III.  Mr. Solee

Mr. Solee claims intentional discrimination based on Defendant's decision not to hire him.  He is a black male who was born in Liberia and was employed by the Howard County Department of Social Services as an Income Maintenance Specialist at the time this suit was filed.  He contends that he applied for an IAP Specialist I position on several occasions between 2000 and the filing of this suit.  He also asserts that he applied for other positions with Defendant.  He was not selected for any position.

Mr. Solee applied for the Specialist I/II position in 2002. Defendant claims that Mr. Solee was deemed to have met the minimum qualifications for the position and was placed on the eligibility list for vacancies between October 2002 and April 2003.  (Paper 46, Ex. A, Hohlfeld Aff., at 2).

Defendant argues that it did not hire Mr. Solee because of a hiring freeze on outside applicants after November 20, 2002.  Mr. Solee argues that this asserted non-discriminatory rationale is pretextual based only on Mr. Gbenoba's statement that Ms. Jackson-Dodd was hired during the hiring freeze.  Defendant has produced evidence explaining that Ms. Jackson-Dodd was offered a position before the hiring freeze went into effect.  As discussed above with respect to Mr. Fomengia, this evidence does not raise a genuine

issue of material fact as to whether the hiring freeze was pretextual.

## IV.  Mr. Osazuwa

Mr. Osazuwa asserts a claim of intentional discrimination based on Defendant's failure to hire him.  He has not filed a complaint with the EEOC regarding these allegations.  Mr. Fomengia, Mr. Ogunsanya, and Mr. Gbenoba did file a Charge of Discrimination against Defendant on February 21, 2003.  Mr. Osazuwa claims in the Opposition and the complaint that he has applied for the IAP Specialist I/II position every year and a total of at least five times, but the record contains no evidence supporting this proposition, and no statement by Mr. Osazuwa at all.  Defendant's records indicate that Mr. Osazuwa applied for the IAP Specialist I/II position in 2003.  Defendant asserts that he was deemed to meet the minimum qualifications for the position and placed on an eligibility list for vacancies between August 14, 2003 and February 3, 2004.  (Paper 46, Ex. A, Hohlfeld Aff., at 2-3).

Mr. Osazuwa's claim will not be considered on its merits because his administrative remedies have not been exhausted.  A plaintiff in a Title VII case must bring Charges of Discrimination before the EEOC before filing suit and within 300 days after the alleged discriminatory action under 42 U.S.C. section 2000e-5(e)(1) in a case, like this one, where a state or local employment discrimination agency is authorized to investigate the complaint.

*White v. BFI Waste Servs.*, 375 F.3d 288, 292 (4th Cir. 2004).  As this court noted in the Memorandum Opinion accompanying its April 8, 2004 Order, (paper 11, at 3-4 n.2), an exception to the administrative filing requirement has been recognized by some courts in the "single-filing rule."   This doctrine allows a plaintiff who has not filed with the EEOC to "piggyback" by relying on an EEOC filing by another individual if the complained of conduct is sufficiently similar to and took place at the same time as the conduct actually asserted in a timely EEOC complaint.[5]  *See, e.g., Bryson v. Fluor Corp.*, 914 F.Supp. 1292, 1295-96 (W.D.S.C. 1995) (requiring a plaintiff's allegations to have been timely under the EEOC complaint actually filed in order to "piggyback"). The single-filing rule is not available to Mr. Osazuwa in this case.  He could not have asserted his allegations of discrimination against Defendant on February 21, 2003, when the EEOC complaint was filed by other plaintiffs, because Defendant did not make any decision not to hire him until after August 2003, when it began filling vacancies from the eligibility list that included Mr. Osazuwa.

---

[5] The status of the single-filing rule in the Fourth Circuit is now more uncertain than at the time of this court's April 8, 2004, Memorandum Opinion.  *See White*, 375 F.3d at 293 (single filing rule "has not yet been adopted in this circuit").   It is unnecessary to address whether the single-filing rule applies because the rule would not benefit Mr. Osazuwa.

## V.  Mr. Iyanda

Mr. Iyanda asserts a claim of employment discrimination based on failure to hire.  He is a black male who was born in Nigeria and worked for the Prince George's County Department of Social Services as an Income Maintenance Specialist I/II at the time of the hiring decisions challenged in this case.  He claims that he applied for at least 12 positions with the Defendant. He has not been selected for a position.  Among the positions Mr. Iyanda claims he applied for were IAP Specialist I/II positions in January 2001, September 2001, and October 2002 and a Financial Assistance Worker position in June 2002.

There is some conflict in the record as to the status of these applications.  Mr. Iyanda does not submit any statement or affidavit as to his own recollection of the events, although Defendant does submit Mr. Iyanda's interrogatory responses.  These indicate the dates Mr. Iyanda claims he applied for each position. (Paper 46, Ex. 7, at 1).  Defendant's evidence conflicts as to whether he was on the eligibility list from which candidates were selected for interviews in summer 2002.  Ms. Hohlfeld's affidavit asserts that he was, (paper 46, ex. 1, Hohlfeld Aff., at 2 ¶ 5), while Defendant's interrogatory responses indicate that he was not, (paper 46, Ex. 3, at 8).  Regardless of whether he was included on the eligibility list at this time, Mr. Iyanda was not interviewed or hired.  Four candidates, all women, were hired prior to the

hiring freeze in 2002, and a fifth candidate was offered a position but declined.  (Paper 60, Ex. C, attachment 1, at 1).

Defendant asserts a non-discriminatory rationale for not hiring Mr. Iyanda.  It asserts that it followed the same procedure for each hiring decision and hired the most qualified individual according to its hiring criteria and that Mr. Iyanda was not as qualified as the four selected candidates.  (Paper 46, Ex. 3, at 8; paper 46, Ex. 1, at 1-2).  Defendant also asserts that Mr. Iyanda was not hired after November 20, 2002  because of the hiring freeze described above.

A plaintiff can demonstrate that an employer's claim that another candidate was better qualified is pretextual either by showing that it was contrived to cover up an actual prohibited motive or by showing that he is more qualified than the selected candidate.  *Gbenoba*, 209 F.Supp.2d at 577.  Mr. Iyanda has not forecast facts sufficient to support the tier of fact in reaching either conclusion.  He offers no facts that tend to show that relative qualification was not the actual basis of Defendant's decision.  Mr. Iyanda also does not offer sufficient facts to demonstrate that he was more qualified than the selected candidates.  He asserts that he had nine years of experience and a graduate degree.  (Paper 46, Ex. 7, at 2).  The record also indicates that one of the selected candidates had a graduate degree and approximately ten years of experience and the others had

20

bachelor's degrees.  (Paper 60, Ex. C, attachment 1, at 1-2).  This evidence fails to capture many aspects of the qualifications Defendant considered in hiring for the position, such as attitude and references.  (Paper 46, Ex. 1, Hohlfeld Aff., at 2).

Mr. Iyanda cannot choose his own criteria upon which to compare his qualifications to those of the selected applicants "when the [Defendant] based its decision on other grounds." *Anderson v. Westinghouse Savannah River Co.*, 406 F.3d 248, 271 (4th Cir. 2005), *cert. denied* 126 S.Ct. 1431 (2006).  Mr. Iyanda's greater education than three of the selected candidates does not necessarily make him more qualified for a position that required only a bachelor's degree.  *Id.* at 270.  Like the plaintiff in *Westinghouse Savannah River Co.*, Mr. Iyanda cannot prove pretext without forecasting evidence sufficient to compare his qualifications to those of the selected candidates on the criteria selected by Defendant, which he has not done.  *Id.* at 269-71.

Mr. Iyanda also has not forecast facts that raise a genuine issue of fact as to whether Defendant's asserted hiring freeze was pretextual.  He does not assert any facts tending to show pretext except Mr. Gbenoba's statement that Ms. Jackson-Dodd was hired during the hiring freeze.  As discussed above, this evidence is insufficient to establish a genuine dispute of material fact in light of Defendant's evidence corroborating Ms. Jackson-Dodd's

start date and explaining why Ms. Jackson-Dodd was allowed to begin work during the hiring freeze.

## VI.  Mr. Adetunji

Mr. Adetunji asserts a claim of discrimination based on failure to promote.  He is a black male who was born in Nigeria and who has worked for Defendant since approximately March 1988.  He claims that he applied for at least four positions with Defendant. He was not selected for any of these positions.  Mr. Adetunji applied for two Human Services Specialist I positions with Defendant in 2001, and was not selected for either position.

Mr. Adetunji did not file an EEOC complaint on his own or in conjunction with any of the Plaintiffs in this case.  Instead, he attempts to rely on the Charges of Discrimination filed by Mr. Fomengia, Mr. Gbenoba, and Mr. Ogunsanya on February 21, 2003.

As discussed above, with respect to Mr. Osazuwa's failure to hire claims, a plaintiff in a Title VII employment discrimination case who has not himself filed a complaint with the EEOC must, even under the single-filing rule, allege conduct that could have been timely asserted in the EEOC complaint upon which he attempts to "piggyback." *Bryson*, 914 F.Supp. at 1296.  Mr. Adetunji's failure to promote claims have not been administratively exhausted and he cannot rely upon the single-filing rule.  Under the circumstances of this case, 42 U.S.C. section 2000e-5(e)(1) provides that a timely complaint could be filed with the EEOC only up to 300 days

after the alleged discriminatory conduct.  Defendant's hiring for the two Human Service Specialist I positions in 2001, however, was conducted more than 300 days before the February 21, 2003, EEOC complaint upon which Mr. Adetunji attempts to "piggyback."  His allegations would not have been timely even if they had been asserted in the Charges of Discrimination filed in February 2003. Therefore, Mr. Adetunji cannot rely on the single-filing rule to excuse his failure to file with the EEOC, *Bryson*, 914 F.Supp. at 1296, and has failed to exhaust his administrative remedies with respect to these allegations.

Mr. Adetunji also argues in the Opposition that he applied for a promotion with Defendant in 2003, in addition to the positions he applied for in 2001, but there is no evidence in the record supporting this assertion.[6]  Because he has not offered any evidence that he applied for a position with Defendant in 2003, Mr. Adetunji cannot make out a *prima facie* case of disparate treatment based on Defendant's decision not to promote him at that time.

A *prima facie* case of discriminatory failure to promote has four elements.  It requires showing that the plaintiff is a member of a protected group, that the plaintiff applied for a position,

---

[6] The record does not include any interrogatory response, affidavit, or other statement from Mr. Adetunji.  In the Opposition, Plaintiffs cite Mr. Adetunji's resume (paper 56, Ex. O) as evidence that he applied for a position with Defendant in 2003, but there is no indication on the resume that such an application was made.

23

that the plaintiff was denied the position, and that the denial took place under circumstances giving rise to a presumption of discrimination. *Bryant v. Aiken Reg'l Med. Ctrs., Inc.*, 333 F.3d 536, 544-45 (4th Cir. 2003) (quoting *Brown v. McLean*, 159 F.3d 898, 902 (4th Cir. 1998)), *cert. denied* 540 U.S. 1106 (2004). Mr. Adetunji comes forward with no evidence to establish that he applied for a position in 2003 and has not established a *prima facie* case.

## VII.  Mr. Gbenoba

Mr. Gbenoba claims discrimination and retaliation based on failure to promote. He is a black male born in Nigeria who has worked for Defendant since 1997. He applied for but was not selected for the higher-grade positions of IAP Supervisor in January 2003 and IAP Specialist III in June 2003.[7] He also alleges that Defendant retaliated against him by "fabricating false accusations against [him] . . . and subjecting [him] to overly onerous scrutiny and disciplinary action." (Paper 13, at 9 ¶ 30p).

Mr. Gbenoba contends that Ms. Barrett threatened retaliation when the Defendant received an earlier EEOC Charge of Discrimination he had filed against it. He states that "[i]n the Spring of 2002, after Montgomery County received the Charge of Discrimination filed with the U.S. EEOC, I received a telephone

---

[7] Mr. Gbenoba was promoted to the position of Program Manager I on November 27, 2005, after this action was filed.

call from Kathy Barrett acknowledging receipt of the complaint and yelled, that I 'would never be promoted as long as she is employed[.]'" (Paper 56, Ex. A, Gbenoba Aff., at 2 ¶ 10).

In September 2002, Mr. Gbenoba and Mr. Ogunsanya applied for the position of IAP Supervisor.  The position involves supervision of a team of IAP Specialists.  The position was filled by Yvonne Carbaugh in January 2003.  This move opened up Ms. Carbaugh's former position, that of IAP Specialist III.  This position "supports lower-graded specialists in processing difficult cases." (Paper 46, Ex. 5, Barrett Aff., at 3 ¶ 8).  Mr. Gbenoba and Mr. Ogunsanya subsequently applied for this position, but Maria Paganini was chosen to fill the position and began work in June 2003.

## A.  Discrimination

Mr. Gbenoba claims that Defendant discriminated against him in choosing Ms. Carbaugh and Ms. Paganini over him for higher-grade positions.  Defendant asserts a non-discriminatory rationale for its decision not to promote him to either position.  Defendant claims that it followed a uniform scoring process and selected candidates, Ms. Carbaugh and Ms. Paganini, who received higher scores than Mr. Gbenoba.[8]

---

[8] Defendant also argues that Mr. Gbenoba is barred by collateral estoppel from arguing that this rationale for not promoting him was pretextual.  Because the court will resolve this issue in favor of defendant, this issue need not be considered.

Defendant asserts that it screened applicants to determine which were "well qualified" and then interviewed the "well qualified" applicants in a standardized and structured interview before the same interview panel.  (Paper 46, Ex. 5, Barrett Aff., at 2-4).

> The same questions were asked of each applicant and each applicant was rated using the following criteria:  presentation of application and supporting documents; experience and knowledge of programs; the content and sincerity with which the applicants responded to questions in the structured interview; the timeliness with which applicants presented requested information, including letters or reference [sic], evaluations and current performance plans; and the content of the letters of reference, evaluations and current performance plans to the extent that they indicated at least a satisfactory performance and adherence to the stated goals of the Department.

(*Id.* at 2 ¶ 5).  Defendant also contends that scores were assigned based on these criteria by each member of the interview panel, and that for each position the candidate with the highest total score was hired.  *Id.* at 2-4.  For both positions, Mr. Gbenoba was deemed well qualified and was interviewed, but Defendant alleges that he did not receive the highest score for either position.

Defendant's asserted rationale for not selecting Mr. Gbenoba for either of the promotions was non-discriminatory.  *Westinghouse Savannah River Co.*, 406 F.3d at 268-69 (analyzing as non-discriminatory an employers assertion that it failed to promote

plaintiff because another applicant received a higher "consensus rating" based on an interview and qualifications).

Mr. Gbenoba argues that this asserted rationale is pretextual because he was more qualified than either Ms. Paganini or Ms. Carbaugh.  A plaintiff can establish that an asserted rationale based on greater qualification is pretextual by showing that he was actually more qualified that the promoted employee.  *See Gbenoba*, 209 F.Supp.2d at 577; *see also Dennis v. Columbia Colleton Med. Ctr.*, 290 F.3d 639, 649 n.4 (4th Cir. 2002).  In attempting to show that he is more qualified, however, a plaintiff "cannot establish [his] own criteria for judging [his] qualifications for the promotion.  [He] must compete for the promotion based on the qualifications established by [his] employer."  *Westinghouse Savannah River Co.*, 406 F.3d at 269.

In an attempt to establish his superior qualifications, Mr. Gbenoba claims that he has superior educational credentials, greater experience, and better knowledge of temporary cash assistance than Ms. Carbaugh and Ms. Paganini.  (Paper 56, Ex. A, Gbenoba Aff., at 1-3).

The plaintiff in *Westinghouse Savannah River Co.,* 406 F.3d at 269, likewise asserted that she was more qualified than the selected candidate because of greater education and experience. These allegations did not create a genuine dispute of material fact because such assertions are insufficient as a matter of law when

the employer "based its decision on other grounds," namely the panel's scoring of interview responses and credentials.   *Id.* at 271.   Likewise, Mr. Gbenoba's claims as to his superior education, longer experience, and greater knowledge of temporary cash assistance fail to address many of the factors, such as interview responses, evaluated by Defendant's interview panel scores.   This evidence does not create a genuine dispute of material fact as to whether Mr. Gbenoba was more qualified than the selected candidates.

Mr. Gbenoba also points to evidence that friends of the selected candidates were part of the interview panels and that some candidates for jobs were preselected, but such an allegation is also insufficient as a matter of law to show pretext.   *See id.* (rejecting allegations of unfair but non-discriminatory hiring practices as a basis of finding employer's hiring rationale pretextual).

## B.  Retaliation

Mr. Gbenoba claims a wide variety of alleged retaliatory conduct, including failure to promote and unfair supervision. First, he asserts that Defendant denied him the two promotions discussed above due to retaliation.   Defendant asserts the same non-discriminatory rationale for not having selected Mr. Gbenoba for these positions:  that he was not the most qualified candidate

because he did not receive the highest score in the selection process.

Mr. Gbenoba makes two arguments why this asserted rationale is pretextual.  First, he asserts that he was more qualified than the selected candidates.  Second, he argues that the statement he alleges Ms. Barrett made upon receiving an earlier EEOC Charge of Discrimination he had filed establishes that Defendant's asserted rationale for hiring Ms. Carbaugh and Ms. Paganini was pretextual.

Defendant asserts that Mr. Gbenoba is precluded from raising these arguments based on collateral estoppel or *res judicata*.  Mr. Gbenoba previously sued Defendant, asserting a Title VII claim for retaliation based, in part, on Defendant's failure to hire Mr. Gbenoba for the two positions filled by Ms. Carbaugh and Ms. Paganini that are at issue in this case and on denial of leave that Mr. Gbenoba also points to in this case, (paper 46, Ex. 10, at 3). *Gbenoba v. Montgomery County Dep't of Health and Human Servs.*, No. DKC-2003-2231, 2005 WL 1490008, at *6 (D.Md. 2005).  In that previous case, this court granted summary judgment to the Defendant on Mr. Gbenoba's claims.  *Id.* at *7.  Mr. Gbenoba is barred by *res judicata* from reasserting the same claims in this suit.  *Res judicata* requires:  "(1) a final judgment on the merits in a prior suit; (2) an identity of the cause of action in both the earlier and the later suit; and (3) an identity of parties or their privies in the two suits." *Pueschel v. United States*, 369 F.3d 345, 354

(4th Cir. 2004) (citing *Nash County Bd. of Educ. v. Biltmore Co.*, 640 F.3d 484, 486 (4th Cir. 1981)).  All of these elements are met in this case insofar as Mr. Gbenoba claims retaliation based on failure to hire for the same positions and the same leave denials. The prior case was decided on the merits at summary judgment, involved the same parties, and involved the same legal claim based on exactly the same conduct by the Defendant.

Mr. Gbenoba also claims that Defendant has and continues to "fabricat[e] false accusations against [him] . . . and subject[] [him] to overly onerous scrutiny and disciplinary action." (Paper 13, at 9 ¶ 30p).  In order to show a *prima facie* case of retaliation, Mr. Gbenoba must show that he engaged in protected activity, that he suffered an adverse employment action at the hands of Defendant, and that Defendant took the adverse action because of the protected activity.  *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 190 (4th Cir. 2001) (citing *Gibson v. Old Town Trolley Tours of Washington, D.C., Inc.*, 160 F.3d 177, 180 (4th Cir. 1998)). Under the test recently articulated by the Supreme Court, adverse employment action in a retaliation case can include any conduct which "a reasonable employee would have found . . . materially adverse" and that might prevent employees from bringing claims of discrimination.  *Burlington Northern & Santa Fe Railway Co. v. White*, 126 S.Ct. 2405, 2415 (2006).

Mr. Gbenoba offers no evidence of any adverse action that is was not precluded as a basis for a new claim by *res judicata*. Mr. Gbenoba has offered evidence of Defendant's failure to hire him and defendant's denial of leave, but these retaliation claims are barred by *res judicata*. He also alleges that under a now-retired supervisor he was subjected to false accusations and unwarranted supervisory conferences. (Paper 46, Ex. 10, at 3). These allegations were also a basis for Mr. Gbenoba's prior Title VII retaliation case, *Gbenoba v. Montgomery County Dep't of Health and Human Servs.*, No. DKC-2003-2231, 2005 WL 1490008, at *10, *12, and *res judicata* bars Mr. Gbenoba from reasserting these claims in this case.

## VIII.  Mr. Ogunsanya

Mr. Ogunsanya claims discrimination and retaliation based on failure to promote and also claims retaliation based on false accusations and unwarranted supervision. He is a black male who was born in Nigeria and who has worked for Defendant since March 20, 2000. He applied but was not selected for the IAP Supervisor position for which Ms. Carbaugh was selected, the IAP Specialist III position for which Ms. Paganini was selected, and a Floater position in July 2002.

## A.  Discrimination

Mr. Ogunsanya asserts a claim of discrimination based on failure to promote. With respect to the IAP Supervisor and IAP

31

Specialist III positions, Defendant asserts the same non-discriminatory rationale that it asserted with respect to Mr. Gbenoba: that Mr. Ogunsanya did not receive as high a score as the selected candidates from a panel that interviewed and reviewed the qualifications of candidates.  As discussed above with respect to Mr. Gbenoba, this rationale is non-discriminatory, and thus Mr. Ogunsanya must prove that it was pretextual.  *Burdine*, 450 U.S. at 253.  Like Mr. Gbenoba, Mr. Ogunsanya attempts to establish pretext by arguing that he was more qualified than the selected applicant.

Mr. Ogunsanya presents evidence of his own superior qualifications similar to that presented by Mr. Gbenoba.  He contends that he has greater educational credentials, more experience, and better knowledge of temporary cash assistance than the selected applicants.  As discussed above, this evidence cannot create a genuine issue of material fact when Defendant based its hiring decision on different criteria under which Mr. Ogunsanya was not as qualified as the selected applicant.  *See Westinghouse Savannah River Co.*, 406 F.3d at 269.  Mr. Ogunsanya comes forward with no other evidence to indicate a discriminatory motive in his non-selection for the positions of IAP Supervisor and IAP Specialist III.

Mr. Ogunsanya's claim that he was not hired to a Floater position in August 2002 is not properly before the court.  Mr. Ogunsanya asserted in his complaint that Defendant "had a practice

of promoting less qualified . . . individuals to higher-grade positions over Plaintiff[] . . . Ogunsanya . . . ." (Paper 13, at 7 ¶30a).  In articulating Mr. Ogunsanya's discrimination and retaliation claims, the complaint refers only to "higher-grade" positions.  (*Id.* ¶¶ 30f, 30p).  Mr. Ogunsanya admits in his interrogatory responses, however, that the floater position was not a higher-grade position but a "lateral transfer." (Paper 46, Ex. 12, at 1).  This allegation of denial of a lateral transfer is not part of the claim asserted by Mr. Ogunsanya.

Furthermore, even if this claim were properly before the court, Mr. Ogunsanya has not offered evidence creating a material question of fact as to whether Defendant's asserted rationale for not selecting him for this position, that he was less qualified than the selected applicant, was pretextual.  The only evidence Mr. Ogunsanya offers to establish pretext is his own assertion that the candidate selected for this position did not have temporary cash assistance training, while he did.  (Paper 56, Ex. K, Ogunsanya Aff., at 2).  This training is not mentioned in an e-mail that set out the position's requirements. (Paper 56, Ex. L).  Mr. Ogunsanya cannot evaluate his own qualifications against Ms. Chan's based on criteria of his own choosing when Defendant has chosen different criteria.  *See Westinghouse Savannah River Co.*, 406 F.3d at 271.

## B.  Retaliation

Mr. Ogunsanya asserts a retaliation claim based on failure to hire and unfair supervision.  With respect to his failure to hire claims, Defendant asserts that he was not hired for any of the positions discussed above because he was less qualified based on scores assigned by the interview panel.  Mr. Ogunsanya asserts that this rationale is pretextual because he is more qualified than the selected candidates, but as discussed above the evidence Mr. Ogunsanya offers on this issue is insufficient to create a genuine dispute of material fact as to whether he was more qualified because he cannot choose his own criteria for that evaluation.

Mr. Ogunsanya, like Mr. Gbenoba, also asserts that Defendant retaliated against him by fabricating false accusations and conducting unfair supervision.  Mr. Ogunsanya states that he has been subjected to "[t]he fear of bad evaluation from my supervisor, I get constant critic about my work and subjected to the use of a peculiar leave slip.  Over-exaggeration of customer complaints, threatened of job securities by office manager (Ms. Gordon)." (Paper 46, Ex. 12, at 3).  It is possible that this conduct establishes a material question of fact as to whether it meets the new standard for actionable retaliatory conduct under *Burlington Northern & Santa Fe Railway Co.*, 126 S.Ct. at 2415.  Mr. Ogunsanya must also demonstrate causation to establish a *prima facie* case of discrimination.  *Jhaveri v. Comptroller of Treasury*, No. RDB

05-1159, 2006 WL 2264388 at *11 (D.Md. Aug. 7, 2006).  No facts in the record indicate when this conduct occurred, and thus Mr. Ogunsanya has not provided evidence to show that the claimed conduct started after or became worse after any previous protected activity.  *See id.* (granting summary judgment on retaliation claim when plaintiff failed to offer evidence establishing timing of alleged retaliation after protected activity).

## IX.  **Conclusion**

Accordingly, Defendant's motion for summary judgment will be granted.

A separate Order will follow.


                            _____/s/_____
                            DEBORAH K. CHASANOW
                            United States District Judge